## Gordon, Secretary of Banking, v. Shilcock et al.

*Joseph K. Fornance,* for plaintiff; *Samuel H. High,* for defendants.

*Louis M. Childs,* for Gordon, Secretary of Banking, receiver of Glenside Bank & Trust Company, real owner.

KNIGHT, P. J., September 7, 1934.—This is a proceeding under the Act of January 17, 1934, P. L. 243, relating to deficiency judgments. By bond and mortgage, dated May 8, 1925, and recorded in mortgage book 1039, page 492, Clarence J. Shilcock became indebted to the trustees under the will of John Wanamaker in the sum of $250,000. The mortgage covered a tract of land in Abington Township known as "Baederwood". By various assignments, title to the above mortgage became vested in William D. Gordon, Secretary of Banking, receiver of Northern Central Trust Company, trustee. Title to the real estate covered by the mortgage became vested in Glenside Bank & Trust Company.

As of no. 348, June term, 1933, the mortgage was foreclosed, and the real estate remaining subject to the lien was sold by the sheriff for $15,405. As the judgment against Shilcock, as mortgagor, and Glenside Bank & Trust Company (now in receivership), as real owner, amounted to $194,105.70, a deficiency appears of $178,700.70.

The Act of 1934, supra, provides in section 1 that the court shall, upon petition, fix the fair value of the property sold. Our task, then, is to fix the fair value as of November 1, 1933, the date of the sheriff's sale of the real estate sold by virtue of the foreclosure proceedings above mentioned.

We have found no case in Pennsylvania in which the phrase "fair value" has received judicial interpretation. It is evident that the legislature did not mean the words to be equivalent to "market value", which has been declared to be the selling price at a bona fide sale after public notice: Lehigh Valley Coal Co. v. Luzerne County, 255 Pa. 17. The very object of the act was to establish the value of real estate at a time when there is little or no market for the same. We are of the opinion the act intends that the court shall establish the just, equitable, and reasonable worth of the real estate at the time it was sold by the sheriff.

Under circumstances such as exist in this case, the fair value of the real estate in question must be a matter of opinion and estimate. Four real estate experts were called, two on each side. Of those called by the petitioner, one placed the fair value at $150,925, the other at $169,500. Both experts called by the defendant fixed the fair value at $241,170.

The Baederwood tract originally contained about 144 acres. Approximately 92 acres of this was plotted by Mr. Shilcock as a lot development. Streets were laid out and some were opened and improved with sidewalks and hard surface roadways. The public utilities—water, gas, and electricity—were made available for some of the lots. Shilcock and his successors in title sold a number of lots, so that the land acquired by the petitioner by virtue of the sheriff's sale amounts to about 77 acres, composed of improved and unimproved lots and some land which the experts treat as acreage.

We have here an unfinished lot development. The tract could hardly be sold as a whole, except to one who intended to complete the project and sell the lots at retail. This is its highest and best use. To complete the development will require the expenditure of a large amount of money. After completion, there will still be the problem of marketing the lots. To do this quickly, by a high pressure campaign, will greatly raise the selling cost. If the lots are held until absorbed by the normal demand, the carrying charges add materially to the cost of the land.

Taking all these elements into consideration, as well as the testimony of the experts as to value, we have fixed the fair value of this land, as of November 1, 1933, at $190,725.

We arrived at this figure as follows:

| | |
|---|---|
| Lot no. 102 | $7,500 |
| Twenty-nine improved lots | 78,925 |
| Sixteen unimproved lots adjacent to the built-up section of Baederwood | 27,840 |
| Balance treated as acreage, and valued at an average of $1,500 per acre | 76,460 |
| | $190,725 |

The judgment was for $194,105.70, and the fair value is found to be $190,725, leaving a deficiency of $3,380.70, to which must be added the costs of the foreclosure proceeding, which appear from the papers offered in evidence as $39.88, and also interest from November 1, 1933, to September 7, 1934, amounting to $172.94, making a total of $3,593.52, for which a deficiency judgment should be entered.

The Act of 1934 is silent as to whom the judgment is to be entered against.

Glenside Bank & Trust Company, the terre-tenant, has no individual liability, and as it no longer owns the land a judgment against it as the real owner is meaningless. We are of the opinion that the judgment should be entered against Clarence J. Shilcock alone.

And now, September 7, 1934, it is ordered that a deficiency judgment be entered against Clarence J. Shilcock, and in favor of William D. Gordon, Secretary of Banking, receiver of Northern Central Trust Company of Philadelphia, trustee, in the sum of $3,593.52.     From Aaron S. Swartz, Norristown, Pa.