Herold et ux. *v.* Butler Board of Revision and Appeals, Appellant.

222

Argued April 22, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Carmen V. Marinaro,* with him *Samuel W. Greer* and *Greer & Greer,* for appellant.

*Willis A. MacDonald,* for appellees.

OPINION BY HIRT, J., July 17, 1947:

The subject of this appeal is a three-story brick building known as Mifflin Apartments, on land approximately 95 x 127 feet, abutting Broad, Mifflin and North Streets in the City of Butler. The city assessor in 1945 valued the property at $79,000 for the triennium beginning with 1946, but his assessment was reduced to $75,000 by the board of tax revision. On appeal to the lower court, the assessment was further reduced to $62,500. The city has appealed contending that the valuation found by the board of tax revision was sustained by the weight of the testimony at the hearing in the court below, and that the court erred in reducing the assessment.

About 25 years ago Pullman-Standard Car Manufacturing Company built two apartment houses in the City of Butler, the Mifflin apartment building and an almost identical structure known as Jefferson Apartments. Both were located on lots of comparable size in the same residential section of the city. The buildings were substantial and were of fireproof construction. In addition to janitor's quarters in the basement, there were 24 living apartments in each building with little difference in layout or plan. The Jefferson building, however, contained several more seven-room apartments and its total floor area was somewhat greater than that of the Mifflin building. There is some evidence that the original cost of construction of each of these buildings was about $300,000.

In September 1944 Oliver C. Herold and Earl F. Herold, his brother, after some negotiations, entered into an agreement with the owner to buy both the Mifflin and the Jefferson apartment properties for a total cash consideration of $125,000. On delivery of deeds each paid $62,500 of the purchase price. Title to the Mifflin Apartments was taken by Oliver C. Herold and wife; Earl F. Herold took title to the Jefferson property.

Assessments in Butler were on the basis of full actual or market values. Appellant, at the hearing below, called two local real estate dealers, both qualified to express opinions as to value. One of them testified that $90,000 was the value of the Mifflin property. In arriving at his conclusion, he considered the character and type of construction of the building as well as its location, and the accumulated depreciation from obsolescence and other causes not compensated by replacement and repairs. Information that the gross annual rentals from the buildings were somewhat in excess of $13,000 also influenced his opinion as to value, although he did not know the cost of maintenance and operation nor the amount of the remaining annual net income. The second real estate dealer called by appellant valued the property at $95,000. Against this testimony, a real estate broker (who formerly had served as city assessor in Butler) called by appellees, testified that the actual value of the Mifflin property at the time of the assessment was but $62,000. His qualifications were admitted and his testimony, as a whole, was impressive.

Under the statute (Act of June 23, 1931, P. L. 932, as amended, 53 PS 12198-2501 et seq.) the court of common pleas, hearing the matter de novo, is made the fact finding body on appeal from the board of revision of taxes. The findings of the lower court, therefore, have great force and, when supported by the weight of the evidence, will not be disturbed on review by an appellate court. *Westbury Apartments, Inc., Appeal,* 314 Pa. 130, 170 A. 267. The ultimate determination in an assessment appeal from the common pleas may not be reversed or modified except for clear error. *Narberth Borough's Appeal,* 338 Pa. 581, 14 A. 2d 294; *Hickey's Appeal,* 326 Pa. 467, 192 A. 923; *American Academy of Music Appeal,* 321 Pa. 433, 184 A. 657. But although we may not assume the rôle of chancellors (*Valvoline Oil Company's Appeal,* 149 Pa. Superior Ct. 161, 27 A. 2d 715) the weight of the evidence is before us on appeal

from an order of the lower court determining assessment value of land for tax purposes. *Narberth Borough's Appeal,* supra. The findings of fact of the lower court, upon which its judgment as to value rests, are subject to review, but only on the legal aspect whether they are sustained by the weight of the evidence. Our function in this class of appeals is exceptional in that (although the proceeding before us is not de novo, *American Academy of Music Appeal,* supra) we may modify the order of the common pleas by increasing or reducing the assessment on our appraisal of the probative force of the testimony where the findings and the ultimate determination of the lower court are clearly against the weight of the evidence. In general, however, we may not substitute our judgment for that of the lower court as to assessment values. The Supreme Court in *Vollmer et al. v. Philadelphia,* 350 Pa. 223, 229, 38 A. 2d 266, described its function on appeal, and ours, thus: "While it was not the intention of the Legislature to make this Court a super-board-of-revision of taxes, yet, as was said, in Glen Alden Coal Co. v. Commissioners, 345 Pa. 159, 167, 27 A. 2d 239: 'If the conclusions of the court below are in whole or in part based on impractical considerations or, conversely, *if the court below fails to give any weight or due weight to a practical consideration relevant to the issue trying,* it is our duty to reverse or appropriately modify its decree.'" *Leh. V. Coal Co. v. North'd Co. Com'rs.,* 250 Pa. 515, 519, 95 A. 712. Our authority to make an independent finding of value is limited to cases where there is not sufficient competent evidence to sustain findings of the lower court or the common pleas is otherwise chargeable with error of law, as in *Lehigh Navigation Coal Co.'s Appeal,* 327 Pa. 327, 193 A. 50; *Hudson Coal Company's Appeal,* 327 Pa. 247, 193 A. 8; *P. & R. C. & I. Co. v. North'd Co. Com'rs.,* 323 Pa. 185, 186 A. 105; *Lehigh & W-B-Glen Alden C. Co.'s Cases,* 300 Pa. 564, 151 A. 359; *Thompson's Appeal,* 271 Pa. 225, 114 A. 774; *Rockhill*

*I. & C. Co. v. Fulton County*, 204 Pa. 44, 53 A. 530;
*York & Foster, Inc., Tax Assess. Case*, 157 Pa. Superior
Ct. 262, 43 A. 2d 557; *Rohrbach Tax Assessment Case*,
156 Pa. Superior Ct. 283, 40 A. 2d 142; *Allentown's
Appeals*, 147 Pa. Superior Ct. 385, 24 A. 2d 109.

Determination of the value of land in assessment
appeals usually rests upon opinion evidence and in typi-
cal cases there is often a wide variance in the testimony
even among real estate dealers who qualify as experts.
Testimony of this class is received only for want of bet-
ter evidence; the ground of its admissibility is necessity,
and even expert opinion evidence has no compelling
probative force. In the present case the hearing judge
alone was in position to appraise, with any degree of
accuracy, the extent of the experience, skill and other
attainments of the expert witnesses and, in the light
of their qualifications, to determine the weight to be
given the testimony of each of them as to value. The
finding that the actual value of the property was $62,500
not only is entirely consistent with the opinion of the
real estate expert called by appellees, but that finding
is supported by other reasonable inferences from the
testimony. That the value so found was the purchase
price paid for the property by appellees is coincidental
merely; the court considered purchase price but did not
accept it as controlling. There is evidence that the Mif-
flin apartment building had been on the market for
some years and for a time at a price as low as $60,000.
The assessed valuation determined by the court is com-
parable in amount with the assessments of four other
somewhat similar apartment buildings in Butler. Market
value of a single purpose building such as the Mifflin
apartments is peculiarly affected by the income it can
be made to produce. For the year 1945 the gross rentals
of Mifflin Apartments amounted to $13,624. The total
cost of janitor service, maintenance and repairs, insur-
ance, heat, light and taxes, was $9,001.26, resulting in

a return of $4,622.74, or about 7½% on the cost of the property. Considering the age and present condition of the building, it is probable that its remaining future profitable economic life will not exceed 20 years and that $3,000 claimed by appellees as the amount of annual depreciation is not unreasonable. Depreciation charged by appellees in that amount reduced the actual net profit for the year to $1,622.74. True, rentals may be increased in the future but the prospect at the time of the assessment was that Federal rent control would continue throughout the triennium.

The sale of the Jefferson Apartments shortly after its purchase is a disturbing fact but in our opinion does not affect the result in this case. Earl F. Herold resold the Jefferson property in May 1945 for a total consideration of $112,000. The sale apparently was bona fide; at least $20,000 of the purchase price was paid in cash and a purchase money mortgage for $80,000 was given by the buyer; the terms of payment of the remaining purchase price do not appear. Earl F. Herold had improved the property after he purchased it but the cost of a new roof and other repairs and replacements made by him did not materially increase the market value of the property. The sale price of the Jefferson property cannot be justified on any rational basis from the testimony in this record. Present earnings, though slightly higher than the income from the Mifflin Apartments, return less than 2% on the investment after depreciation.

Sale price of land while always considered an important element of market value has never been held controlling in determining value for assessment purposes. *Hickey's Appeal,* supra. The Act of May 25, 1939, P. L. 225, as well as the amendment of April 10, 1945, P. L. 167, 53 PS 12198-2504 (in providing that ". . . the price at which any property may bona fide actually have been sold, shall be considered, but shall not be controlling") merely codified the rule laid down by the courts and in

this respect provided no new basis for assessment. *Barry Tax Assessment Case*, 353 Pa. 72, 44 A. 2d 296; *Suermann et al. v. Hadley, Treas.*, 327 Pa. 190, 205, 193 A. 645; *Allentown's Appeals*, supra. The Mifflin and Jefferson Apartments were almost identical and were of about the same market value. The sale price of the Jefferson property therefore was a material consideration in the present case but it was not in any sense controlling. In the light of all of the circumstances the lower court cannot be charged with error in failing to affirm the present assessment at the amount determined by the board of tax revision, because of the sale price of another though identical property where the consideration paid is so obviously in excess of its actual value.

The conclusion of the lower court is sustained by the weight of the evidence and the present record does not disclose error of law in the proceedings below.

Order affirmed.